UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| THERESA VYTLACIL and KIM MORGAN, Individually and on Behalf of All Others Similarly Situated,<br><br>         Plaintiffs,<br>vs.<br><br>THE CBE GROUP, INC.,<br><br>         Defendant. | Case No.: 17-cv-644<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Theresa Vytlacil is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Kim Morgan is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes.

6. Defendant The CBE Group, Inc. ("CBE") is a foreign corporation with its principal place of business located at 1309 Technology Parkway, Cedar Falls, IA 50613.

7.  CBE is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.  CBE is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. CBE is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

### *Vytlacil Letter*

9.  Plaintiff Theresa Vytlacil entered into one or more consumer transactions with Wheaton Franciscan Healthcare ("WFH") for personal medical services. The alleged debt was thus incurred for personal, family or household purposes.

10. On or about May 6, 2016, CBE mailed a debt collection letter to Vytlacil regarding a debt, allegedly owed to WFH. A copy of this letter is attached to this complaint as Exhibit A.

11. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Vytlacil inserted by computer.

12. Upon information and belief, Exhibit A is a form debt collection letter used by CBE to attempt to collect alleged debts.

13. Upon information and belief, Exhibit A is the first written communication that CBE sent to Vytlacil regarding the alleged debt to which Exhibit A refers.

14. Exhibit A contains the following text:

> Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days after receiving this notice, that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor. This is an attempt to collect a debt; any information obtained will be used for that purpose. This communication is from a debt collector.

2

15. The above language in Exhibit A is the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer. 15 U.S.C. § 1692g.

16. Exhibit A also contains the following statement:

> You now have the opportunity to pay this account in full or we may report the debt to one or more of the three national credit bureaus after the fortieth (40th) day from the date of this letter.

17. Plaintiff, thus, has forty days from the date of Exhibit A to pay the allegedly overdue account or face being reported to the "three national credit bureaus." (Exhibit A).

18. Upon information and belief, by the "three national credit bureaus," CBE means credit reporting agencies TransUnion, Experian and Equifax (collectively, "CRAs").

19. If Exhibit A was actually mailed on May 6, 2016, the 30 day validation period identified in Exhibit A would end less than ten days before Plaintiff's account would be potentially be reported to the CRAs if Plaintiff does not pay off the alleged debt to CBE. *See* 15 U.S.C. § 1692g(a).

20. Exhibit A is confusing to the unsophisticated consumer because it both demands a payment within the validation period or shortly thereafter and specifies a consequence (credit reporting) for not doing so, but does not explain how the validation notice and payment deadline fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

21. The unsophisticated consumer would have no idea how to both seek verification of the debt and avoid being reported to the three national credit bureaus in Exhibit A. Nothing in

3

Exhibit A makes clear whether a dispute would actually stop or otherwise affect the process of reporting the Plaintiff's account to CRAs.

22. Further, even if the consumer disputed the debt in writing, it is likely that the forty day deadline to pay to avoid being reported would expire before the debt collector provides verification. The consumer would be left with little or no time to review the verification and determine whether the debt is legitimate and actually theirs before paying CBE. Thus, the effect of the credit bureau reporting threat is to discourage or prevent consumers from exercising their validation rights.

23. The Seventh Circuit has established "safe harbor" language regarding apparent conflicts between validation rights and demands for payment in collection letters. *Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997).

24. Defendant did not use the safe harbor language in Exhibit A, or any equivalent or similar language.

### *Morgan Letters*

25. Plaintiff Kim Morgan also entered into one or more consumer transactions with WFH for personal medical services. The alleged debt was thus incurred for personal, family or household purposes.

26. On or about June 4, 2016, CBE mailed a debt collection letter to Morgan regarding a debt, allegedly owed to WFH. A copy of this letter is attached to this complaint as Exhibit B.

27. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Morgan inserted by computer.

4

Case 2:17-cv-00644-JPS    Filed 05/04/17    Page 4 of 11    Document 1

28. Upon information and belief, Exhibit B is a form debt collection letter used by CBE to attempt to collect alleged debts.

29. Exhibit B contains the following text:

> You now have the opportunity to pay this account in full or we may report the debt to one or more of the three national credit bureaus after the fortieth (40th) day from the date of this letter.

30. Upon information and belief, the above statement in Exhibit B is misleading to the unsophisticated consumer.

31. CBE had previously mailed a debt collection letter to Morgan, seeking to collect the same debt as in Exhibit B, in January 2016. A copy of this letter is attached to this complaint as Exhibit C.

32. Both "Your Account Number" and the "Total Amount Due" are the same in Exhibits B and C. The letters both attempt to collect the same $121.00 WFH debt.

33. Exhibit C also includes the same credit reporting language as in Exhibit B:

> You now have the opportunity to pay this account in full or we may report the debt to one or more of the three national credit bureaus after the fortieth (40th) day from the date of this letter.

34. The unsophisticated consumer would be confused and actually misled by the credit reporting language present in both Exhibits B and C.

35. If CBE had already reported the debt to the CRAs at the time CBE sent Exhibit B, Morgan did not have 40 days from the date of Exhibit B to avoid credit reporting.

36. Alternatively, if CBE had not reported the account to the CRAs between 40 days after mailing Exhibit C to Morgan and the date CBE mailed Exhibit B to Morgan, CBE falsely threatened negative credit reporting as a consequence of nonpayment when CBE had no intention to actually report the debt to the CRAs.

37. Consumers fear negative information impacting their "credit scores." The credit reporting language in Exhibits A-C is designed to capitalize on that fear, regardless of whether WFH or CBE actually reports accounts to CRAs.

38. The deceptive credit reporting language in Exhibits A-C has the practical effect of causing the unsophisticated consumer to prioritize paying CBE over other creditors and collectors, in order to either avoid credit reporting that is not imminent or to prevent credit reporting that has already happened. *See*, 15 U.S.C. § 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, *to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged*, and to promote consistent State action to protect consumers against debt collection abuses.") (emphasis added).

## *The FDCPA*

39. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

40. 15 U.S.C. § 1692g(b) states, in part:

> (b) **Disputed debts**
> …

6

> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

41. 15 U.S.C. § 1692e provides, in relevant part: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

42. 15 U.S.C. § 1692e(5) specifically prohibits: "The threat to take any action that cannot legally be taken or that is not intended to be taken."

43. 15 U.S.C. § 1692e(10) prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

44. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

45. Plaintiffs were confused by Exhibits A-C.

46. Plaintiffs had to spend time and money investigating Exhibits A-C and the consequences of any potential responses to Exhibits A-C.

47. Plaintiff had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise Plaintiff on the consequences of Exhibits A-C.

48. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a

cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

49. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

## COUNT I – FDCPA

50. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

51. The statement on Exhibit A that CBE may report Vytlacil's account to the three national credit bureaus unless Plaintiff pays in full by a deadline within ten days of the validation period ending, conflicts with and overshadows the debt validation notice, in that Exhibit A demands a payment within the validation period or shortly thereafter and threatens a

8

consequence for non-payment, but does not explain how the validation notice and "deadline" fit together. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

52. The same statement on Exhibit B is confusing because CBE had previously mailed the same statement to Morgan five months earlier. Exhibit C. The statement on Exhibit B was false and misleading, regardless of whether CBE actually reported Morgan's account to the CRAs.

53. Exhibits A and B are confusing, deceptive, and/or misleading to the unsophisticated consumer.

54. Defendants violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10) and 1692g.

## CLASS ALLEGATIONS

55. Plaintiffs bring this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibits A or B to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between May 4, 2016 and May 4, 2017 (e) that was not returned by the postal service.

56. Plaintiff Morgan also brings this case on behalf of a subclass, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibits A or B to the complaint in this action, (c) more than 45 days after they were sent a previous collection letter (d) containing the statement: "You now have the opportunity to pay this account in full or we may report the debt to one or more of the three national credit bureaus after the fortieth (40th) day from the date of this letter.", (e) seeking to collect a debt for personal, family or household purposes, (f) between May 4, 2016 and May 4, 2017 (g) that was not returned by the postal service.

9

Case 2:17-cv-00644-JPS   Filed 05/04/17   Page 9 of 11   Document 1

57. The Class and Subclass are so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class and more than 50 members of the Subclass.

58. There are questions of law and fact common to the members of the Class and Subclass, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with 15 U.S.C. § 1692e, 1692e(5), 1692e(10), and 1692g.

59. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

60. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

61. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

62. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: May 4, 2017

**ADEMI & O'REILLY, LLP**

By: /S/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com